**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NAADAM INC.,

                    Plaintiff,

        v.

BRIAN LINTON,

                    Defendant.

Civil Action No. 25-557-GBW

---

Alexis R. Gambale, PASHMAN STEIN WALDER HAYDEN, P.C., Wilmington, DE; Deanna Koestel, PASHMAN STEIN WALDER HAYDEN, P.C., New York, NY

      *Counsel for Plaintiff*

Jeffrey M. Carbino, PIERSON FERDINAND LLP, Wilmington, DE; Stephen G. Bresset, BRESSET & SANTORA, LLC, Honesdale, PA

      *Counsel for Defendant*

**MEMORANDUM OPINION**

May 7, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is the Motion of Defendant Brian Linton ("Defendant") to Dismiss the Complaint ("Defendant's Motion"). (D.I. 6). Plaintiff Naadam Inc. ("Plaintiff") opposes Defendant's Motion. (D.I. 8). For the reasons set forth below, Defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

### A.    Factual Background

The following are factual allegations from Plaintiff's Complaint (D.I. 1) and are taken as true for the purpose of resolving Defendant's Motion.

"Plaintiff Naadam, Inc. is a leader in the American clothing industry." (D.I. 1 ¶ 13). "On or about January 8, 2022, Defendant . . . , Sand Shack's then-CEO, and Naadam's CEO, Matt Scanlan, were connected through a mutual investor about whether Naadam would be interested in a potential investment in Sand Shack." (*Id.* ¶ 14). "At the time, Sand Shack[, LLC ('Sand Shack')] was in the industry of selling men's and women's apparel and accessories by and through its brand, United By Blue." (*Id.*). Defendant aggressively "pitched Sand Shack and its United By Blue brand to Naadam as a lucrative and time sensitive investment opportunity, touting strong financial prospects and imminent growth," at times going so far as to "discourage[] further diligence and resist[] Plaintiff's requests for additional financial disclosures or representations." (*Id.* ¶ 15). Due to the sense of urgency created by Defendant, and relying on "materially false and misleading" documents provided by Defendant and his team, Plaintiff proceeded to invest in Sand Shack on May 12, 2022. (*Id.* ¶ 16).

After Plaintiff invested in Sand Shack, Plaintiff discovered that the information provided by Defendant "was false and misleading." (D.I. 1 ¶ 22). As an example, on May 6, 2022 (pre-

1

investment), Defendant emailed Plaintiff 2022 financial projections that outlined Sand Shack was expected to have: (1) $24,163,341 in Net Revenue, (2) $13,107,598 in Gross Profit, and (3) $1,563,799 in earnings before interest, taxes, depreciation, and amortization ("EBITDA"). (*Id.* ¶ 17). On June 16, 2022, in preparation for Plaintiff's First Quarter board meeting, Defendant and his team provided Plaintiff different 2022 financial projections for Sand Shack, which showed Sand Shack was expected to have: (1) $20,128,585 in Net Revenue, (2) $9,607,394 in Gross Profit, and (3) -$1,975,974 in EBITDA. (*Id.* ¶¶ 23-25). Sand Shack's actual 2022 financial information showed that Sand Shack received: (1) $16,793,118 in Net Revenue, (2) $5,446,835 in Gross Profit, and (3) -$4,413,684 in EBITDA. (*Id.* ¶ 30).

While Defendant "was misleading [Plaintiff] and pressuring it to close, he was also renegotiating loans and debts on which [Defendant] and Sand Shack had already defaulted or were on the brink of defaulting," which notably included "new repayment dates that began only after [Plaintiff's] investment." (D.I. 1 ¶ 34). "In the months following the acquisition," and in response to an inquiry from one of Sand Shack's largest creditors, Hilldun Corporation ("Hilldun"), Plaintiff learned that Sand Shack had at least fifteen default/collection notices. (*Id.* ¶¶ 38-41). Upon learning the full extent of Sand Shack's debts, Hilldun initiated foreclosure proceedings against Sand Shack, resulting "in the forced sale of Sand Shack's intellectual property." (*Id.* ¶ 42). Defendant ultimately left Sand Shack's employment on March 31, 2023. (*Id.* ¶ 46). Despite no longer being employed by or authorized to conduct business on behalf of Sand Shack, Defendant "secretly continued to access Sand Shack accounts, withheld signatory and administrative access from Sand Shack and even transferred ownership of Sand Shack's web domain to Hilldun in connection with the IP sale – without notifying [Plaintiff] or providing [Plaintiff] with an opportunity to preserve critical data." (*Id.* ¶ 47). Additionally, "[d]uring this unauthorized access

2

period, and without [Plaintiff's] knowledge or consent, [Defendant] withdrew $100,000 from one of the Sand Shack's bank accounts." (*Id.* ¶ 48).

### B.    Procedural History

On September 12, 2023, Defendant initiated an action against Plaintiff in the United States District Court for the Eastern District of Pennsylvania ("the Related Action"). *See* D.I. 1, C.A. No. 24-94. The Related Action was transferred to this Court on January 25, 2024. D.I. 21, C.A. No. 24-94. On March 8, 2024, Plaintiff filed a motion to dismiss for failure to state a claim in the Related Action (D.I. 35, C.A. No. 24-97), which the Court granted-in-part and denied-in-part (D.I. 54, C.A. No. 24-97). Defendant then filed an Amended Complaint in the Related Action on March 13, 2025, which includes eight counts: (1) "fraud," (2) "intentional misrepresentations," (3) "negligent misrepresentations," (4) "common law misappropriation," (5) "declaratory judgment," (6) "breach of fid[u]ciary duties," (7) "unjust enrichment," and (8) "conversion." D.I. 57 at 9-20, C.A. No. 24-97.

On May 6, 2025, Plaintiff filed the Complaint in this action, alleging four claims against Defendant: (1) "Fraud in the Inducement," (2) "Fraudulent Concealment," (3) "Negligent Misrepresentation," and (4) "Breach of Fiduciary Duty." (D.I. 1 at 12-17). On July 24, 2025, Defendant moved to dismiss the Complaint. (D.I. 6). Defendant's Motion has been fully briefed. (D.I. 7; D.I. 8; D.I. 11). For the reasons set forth below, Defendant's Motion is granted-in-part and denied-in-part.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant

3

is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

### B.    Standing

Once a court's jurisdiction is challenged, it must presume that it lacks jurisdiction unless the party asserting that jurisdiction exists can prove otherwise. *G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022); *accord Carney v. Adams*, 592 U.S. 53, 59 (2020) ("[Plaintiff]

4

bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter."). "Under [Rule] 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *Shibles v. Bank of Am., N.A.*, 730 F. App'x 103, 105 (3d Cir. 2018) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)) (alteration in original). A motion to dismiss under Rule 12(b)(1) may be a "facial" attack, in which defendants argue that the allegations in the complaint are insufficient to invoke federal jurisdiction, or a "factual" attack, in which defendants question the asserted facts underlying federal court jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). If a party brings a facial attack, as here (D.I. 7 at 7 (asserting a lack of standing based on "the allegations set forth by" Plaintiff)), the Court must "consider the allegations of the complaint as true," *Davis*, 824 F.3d at 346 (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

The Constitution extends "[t]he judicial Power" only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Thus, the plaintiff must have "a personal stake in the case – in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis*, 824 F.3d at 346 (citation omitted). "To establish standing, a plaintiff must show '(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 130-31 (3d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 423). Courts traditionally recognize "physical harms and monetary harms" as "providing a basis for a lawsuit . . . ." *TransUnion*, 594 U.S. at 423. "For an injury to be 'particularized,' it 'must

5

affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citation omitted).

### III.    DISCUSSION

The Court divides its discussion into two sections: (A) standing and (B) sufficiency of Plaintiff's claims.

#### A.    Standing

Defendant first contends that the Complaint should be dismissed for lack of standing. (D.I. 7 at 5). In Defendant's view, all of Plaintiff's claims belong to Sand Shack, not Plaintiff, and thus Plaintiff lacks standing to assert its purported claims against Defendant. (*Id.* at 6-7).

Plaintiff disagrees.    In Plaintiff's view, its causes of action arise from Defendant's fraudulent misrepresentations in connection with the purchase of Sand Shack and, as such, Defendant's injuries are separate from any injury that Sand Shack suffered as a result of Defendant's alleged conduct. (D.I. 8 at 8-9). Moreover, Plaintiff asserts that, because Sand Shack's bankruptcy estate has closed, it would nonetheless inherit Sand Shack's claims. (*Id.*).

A core principle of prudential standing is that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). To sustain a direct action as a shareholder, the shareholder must demonstrate that it has "a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990); *see also Willekes v. Serengeti Trading Co.*, 783 F. App'x 179, 183-84 (3d Cir. 2019) ("A shareholder may have standing 'to recover for injuries that were inflicted on him individually rather than on the corporation.'" (quoting *In re Kaplan*, 143 F.3d 807, 812 (3d Cir. 1998))).

6

Absent a direct injury, a shareholder must seek relief through a derivative action, which is an action on behalf of the corporation. Courts "generally prohibit[] shareholders from initiating [derivative actions] unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (quoting *Franchise Tax Bd. of California*, 493 U.S. at 336). To be excepted from this general prohibition against derivative actions, the shareholder must plead "with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "If a party brings derivative claims without first making [a] demand, and demand is not excused, those claims must be dismissed." *Wise v. Biowish Techs., Inc.*, Civ. No. 18-676-RGA, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019) (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. Civ. A. 762-N, Civ. A. 763-N, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005)).

The Court looks to the law of the state of incorporation to decide whether Plaintiff's alleged injuries are derivative. *See In re Sunrise Sec. Litig.*, 916 F.2d 874, 879-82 (3d Cir. 1990) (applying the law of the state of incorporation); *In re Ressler*, 597 F. App'x 131, 135 n.5 (3d Cir. 2015) (same) (citing 12B Fletcher Cyclopedia of the Law of Corporations § 5911 (2014)). Since Sand Shack is incorporated in Delaware, (D.I. 1 ¶ 11), the Court will apply Delaware law.

Plaintiff's claims are not derivative because Plaintiff alleges harms completely "independent of [its] status as a shareholder." *Ressler*, 597 F. App'x at 136 (quoting 12B Fletcher Cyclopedia of the Law of Corporations § 5911 (2014)); *see also In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1056 (Del. Ch. 2015) (explaining that a tort claim for fraud does not "arise out of the relationship between the stockholder and the corporation"). Plaintiff's claims

7

stem, in part, from its activities as a *buyer* of Sand Shack, not from Defendant's purported mismanagement of Sand Shack. (*See, e.g.*, D.I. 1 ¶¶ 56-57 (Defendant "knowingly and intentionally provided false information to Naadam regarding Sand Shack," which "were material."); *id.* ¶ 66 (Defendant "knowingly failed to disclose and intended to conceal material facts concerning [Sand] Shack's financial condition."); *id.* ¶ 74 (Defendant "provided false information to [Plaintiff] regarding Sand Shack, including the false and inflated statements regarding Sand Shack's projected net revenue, gross profits, and EBITDA for calendar year 2022 . . . ."); *id.* ¶ 81 ("[Defendant] breached his fiduciary duties to [Plaintiff], by, among other things, intentionally: (i) misrepresenting Sand Shack's financial condition and concealing material liabilities; (ii) misappropriating Sand Shack funds after his termination to satisfy personal guarantees; (iii) refusing to relinquish access to Sand Shack's accounts after he was terminated; and (iv) transferring account access to Hilldun without notice or consent."). Thus, the Court concludes that Plaintiff's claims are not derivative and that Plaintiff has properly pled standing with regard to its claims. *See Activision Blizzard*, 124 A.3d at 1056 (noting that fraud claims for a purchase or sale of shares are not derivative because they "arise[] out of the false representations made by the buyer or seller on which the counterparty relied to [its] detriment").

Accordingly, Plaintiff's status as a shareholder is irrelevant to its claims of fraud and intentional and negligent misrepresentation, and Plaintiff has standing to sustain an individual action on these claims.

> ### B.    <u>Sufficiency of Plaintiff's Claims</u>
>
> > 1.    Plaintiff has Sufficiently Pled its Fraudulent Inducement <u>Claim</u>

Defendant first challenges the sufficiency of Plaintiff's fraudulent inducement claim. (D.I. 7 at 8-9). Specifically, Defendant contends that Plaintiff's allegations are based on financial

projections, which, by their very nature, are predictive and therefore require that they be presented with "knowing falsity." (*Id.*). According to Defendant, the Complaint "does not give rise to a strong inference that Sand[ Shack's] projections were knowingly or recklessly false or misleading or that [Defendant] acted with reckless indifference to the truth." Thus, Plaintiff's fraudulent inducement claim fails the pleading standard under Federal Rule of Civil Procedure Rule 9(b).[1]

Plaintiff disagrees. In Plaintiff's view, given Defendant's position at Sand Shack, he should have known that the financial projections that he provided before Plaintiff invested in Sand Shack "were materially false when made." (D.I. 8 ¶ 55). Furthermore, Plaintiff pleads that it reasonably relied on Defendant for accurate and reliable financial projections. (*Id.* ¶¶ 57-58).

The Court agrees with Plaintiff. "In order to state a claim for fraud or fraudulent inducement, plaintiff must plead with particularity the following elements: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, C.A. No. 11141-VCS, 2016 WL 5243950, at *7 n.34 (Del. Ch. Sept. 22, 2016) (quoting *Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, 2010 WL 2802409, at *4 (Del. Super. July 12, 2010)). The "false representations of material fact" that Plaintiff bases its fraudulent inducement claim on are the financial projections that Defendant sent Plaintiff before Plaintiff invested in Sand Shack. (D.I.

---

[1]    Defendant also cites generally to the Private Securities Litigation Reform Act ("PLSRA"). (D.I. 7 at 8-9). However, Plaintiff does not bring any PLSRA claims. (*See* D.I. 1 at 12-17 (no PLSRA claims)); *see also Rheault v. Halma Holdings Inc.*, No. CV 23-700-WCB, 2023 WL 8005318, at *3 (D. Del. Nov. 7, 2023) (Bryson, J., sitting by designation) (analyzing common-law fraud claim under Federal Rule of Civil Procedure 9(b)).

8 ¶¶ 52-54 (citing D.I. 1 ¶¶ 17, 30-32)). "Under Delaware law, predictions or expressions of opinion about future events generally are not treated as false statements of fact absent particularized allegations that the speaker knew the statements were false when made." *Wildenberg v. Sign-Zone Holdings L.P.*, 350 A.3d 637 ¶ 10 (Del. 2025) (internal citations omitted). "At the pleading stage, knowledge can be adequately alleged where well-pleaded facts make it reasonably inferred that this 'something' was knowable and that the defendant was in a position to know it." *Id.* (cleaned up).

The Complaint outlines specific facts that support the inference that Defendant knew the financial projections he provided to Plaintiff were false. Specifically, the Complaint alleges that (1) Defendant was the CEO of Sand Shack at the time of the acquisition, (*see* D.I. 1 ¶ 32), (2) Defendant pressured Plaintiff for a rapid close on Plaintiff's investment in Sand Shack, and discouraged further diligence into Sand Shack, (*id.* ¶¶ 15-16, 33), (3) Defendant was actively renegotiating loans with "new repayment dates that began only after [Plaintiff's] investment," (*id.* ¶ 34), and (4) a little over one month after Defendant provided Plaintiff pre-investment financial projections, Defendant provided Plaintiff updated financial projections that "represented a $4,034,756, $3,500,204, and $3,539,773 decrease in projected Net Revenue, Gross Profit and EBITDA, respectively," (*id.* ¶ 26). Such allegations are sufficient for the Court to reasonably infer that Defendant provided Plaintiff knowingly false projections to induce Plaintiff's investment in Sand Shack. *See Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, C.A. No. 2019-0567-AGB, 2020 WL 4355555, at *17-18 (Del. Ch. July 30, 2020) (finding claim for false representation properly pled when plaintiff alleged that defendant (1) had control of corporation, (2) regularly received financial information, (3) was closely involved in the sales process of the corporation and directed employees to make financial statements look better to potential investors, and (4) pushed

10

for buyers to close the deal with a sense of urgency). Thus, the Court concludes that Plaintiff has properly pled its fraudulent inducement claim, and Defendant's Motion to Dismiss Plaintiff's fraudulent inducement claim is denied.

  2. Plaintiff has Not Sufficiently Pled its Fraudulent Concealment Claim

  Defendant next moves to dismiss Plaintiff's fraudulent concealment claim. In Defendant's view, his failure to disclose that he was actively engaging in refinancing efforts does not constitute fraudulent concealment because such information was speculative until refinancing on the debt was obtained. (D.I. 7 at 10). Moreover, Defendant asserts that his debt refinancing efforts were not fraudulent, but merely in line with his duty to Sand Shack to make prudent financial decisions. (*Id.* at 11). Defendant further claims the harm alleged, "the failure of Sand [Shack] and disrupted business relationships of [Plaintiff]," occurred after the acquisition of Sand Shack and is not attributable to any fraudulent concealment on Defendant's part. (*Id.*).

  Plaintiff disagrees. Plaintiff asserts that the Complaint "alleges that Defendant knowingly concealed Sand Shack's true financial condition, including undisclosed loan defaults, pending collection actions, and [Sand Shack's] immediate risk of insolvency." (D.I. 8 ¶ 63 (citing D.I. 1 ¶¶ 34-36, 39-42, 66)).

  The Court agrees with Defendant. A claim of fraudulent concealment requires "(1) Deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) That the defendant acted with scienter; (3) An intent to induce plaintiff's reliance upon the concealment; (4) Causation; and (5) Damages resulting from the concealment." *Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987) (citing *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983)). As an initial matter, the Court finds that Plaintiff cannot rely on "undisclosed loan default" and "pending collection actions" in support of its fraudulent

11

concealment claim. "A claim for fraudulent concealment must be pleaded with particularity, in accordance with Federal Rule of Civil Procedure 9(b)." *Banks v. E.I. du Pont de Nemours & Co.*, C.A. No. 19-1672-MN-JLH, 2022 WL 3139087, at *12 (D. Del. Aug. 4, 2022), *report and recommendation adopted*, C.A. No. 19-1672 (MN) (JLH), 2022 WL 3577111 (D. Del. Aug. 19, 2022). "That means that the plaintiff 'must plead his claim with enough particularity to place defendant[] on notice of the precise misconduct with which [he is] charged.'" *Id.* (quoting *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017)). Scienter may be pled generally, but "a plaintiff must still allege sufficient facts from which it can be reasonably inferred that this 'something' was knowable and that the defendants were in a position to know it." *Mkt. Am., Inc. v. Google, Inc.*, No. C.A. 09-494-GMS, 2010 WL 3156044, at *4 (D. Del. Aug. 9, 2010) (cleaned up).

Although the Complaint alleges that Defendant did not disclose "fifteen (15) default/collection notices" to Plaintiff during due diligence when Plaintiff was deciding whether to invest in Sand Shack, (D.I. 1 ¶¶ 41-42), Plaintiff fails to plead when Defendant received any of the default/collection notices. (*See generally* D.I. 1 (failing to state with particularity when Defendant received default notices)). Importantly, Plaintiff only pleads that it received the default/collection notices at issue on March 7, 2023, almost ten months after it invested in Sand Shack. (D.I. 1 ¶ 18 (Plaintiff invested on May 12, 2022); *id.* ¶ 41 (Plaintiff learned of default/collection notices on March 7, 2023)). Thus, absent an allegation of when the default notices were received by Defendant, Plaintiff has not adequately pled scienter as to the default/collection notices, and Plaintiff cannot rely on them in support of its fraudulent concealment claim. *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 n.121 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett* ("Similar to the strict

12

pleading standards of the Private Securities Litigation Reform Act ('PSLRA') and federal Rule 9(b), Delaware law also does not permit the conclusion that a defendant knew of certain facts involving an organization merely because the defendant had a position of responsibility within that organization."); *see also Alvarez v. Ins. Co. of N. Am.*, 313 Fed. App'x. 465, 467-68 (3d Cir. 2008). ("A party must allege facts 'which will enable the court to draw an inference of fraud,' and allegations in the form of conclusions or impermissible speculation as to the existence of fraud are insufficient.").

The remaining set of facts on which Plaintiff bases its fraudulent concealment claim involve Defendant's failure to disclose that it was actively renegotiating repayment of debts to begin after Plaintiff's investment in Sand Shack. (D.I. 8 at 12). However, Plaintiff does not plead that Defendant used the funds obtained from Plaintiff to repay these loans, or that Defendant misled Plaintiff as to what these funds were to be used for. (*See generally* D.I. 1 (not making any such allegations)). Instead, Plaintiff points to the suspicious timing of the debt repayment schedule in conjunction with when the funds from Plaintiff were received. (D.I. 1 ¶ 34). Such general allegations are insufficient to meet the heightened pleading standard under Rule 9(b). *Cf. Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 413 (D. Del. 2005), *aff'd*, 502 F.3d 212 (3d Cir. 2007) ("However, the mere possibility of a future change is a speculative concern, and such speculation is not required to be disclosed to shareholders."). Thus, Defendant's motion to dismiss Plaintiff's fraudulent concealment claim is granted. However, because the Court concludes that amendment may cure the above deficiencies, Plaintiff's fraudulent concealment claim is dismissed without prejudice.

13

3. **Plaintiff has Sufficiently Pled its Negligent Misrepresentation Claim**

Next, Defendant moves to dismiss Plaintiff's negligent misrepresentation claim. In Defendant's view, Plaintiff's negligent misrepresentation claim fails because Plaintiff does not properly plead that (1) Defendant had a pecuniary duty and (2) that Plaintiff suffered a pecuniary loss. (D.I. 7 at 12-13).

Plaintiff disagrees. In Plaintiff's view, Defendant's position as co-owner and CEO of Sand Shack conferred a pecuniary duty on Defendant in connection with Plaintiff's investment in Sand Shack. (D.I. 8 ¶ 71). Moreover, Plaintiff asserts that it "has suffered financial, reputational, and other serious harm . . . in the amount to be proven at trial, but not less than the full value of its investment in Sand Shack." (*Id.* ¶ 78).

The Court agrees with Plaintiff. "To plead negligent misrepresentation, [Plaintiff] must allege that '(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information.'" *PR Acquisitions, LLC v. Midland Funding LLC*, C.A. No. 2017-0465-TMR, 2018 WL 2041521 (Del. Ch. Apr. 30, 2018) (citing *Steinman v. Levine*, No. Civ.A. 19107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003)). Defendant challenges the first and last element of this claim, namely, that Defendant did not have a pecuniary duty to provide accurate information and that Plaintiff failed to allege a pecuniary loss with the requisite specificity.[2] Neither are persuasive.

---

[2] Defendant raises, in a single sentence, that Plaintiff's "claim does not give rise to a strong inference that Sand[ Shack's] projections were knowingly false or misleading." Because this argument was not squarely argued, it is waived. *Goldman v. Citigroup Global Markets, Inc.*, 834 F.3d 242, 248 n. 5 (3d Cir. 2016) ("[A]rguments raised in passing ..., but not squarely argued, are considered waived.") (quoting *John Wyeth & Bro. Ltd. v.*

Contrary to Defendant's suggestion, Plaintiff has adequately pled a pecuniary duty to provide accurate information. Specifically, Plaintiff pled that Defendant "aggressively pitched Sand Shack" as a good investment opportunity (D.I. 1 ¶ 15), provided Plaintiff with requested information throughout the diligence process (*id.* ¶ 16), and was a signatory to Sand Shack's new operating agreement, executed after Plaintiff had invested in Sand Shack (*id.* ¶ 19). The aforementioned allegations are sufficient to allege that Defendant had a pecuniary duty to provide Plaintiff with accurate information during the negotiations surrounding Plaintiff's decision to invest in Sand Shack.

The circumstances the Court is presented with in this action are similar to those in *Lieberman v. BeyondTrust Corp.*, C.A. No. 1:19-CV-01730-RGA, 2020 WL 1815547 (D. Del. Apr. 9, 2020). In *Lieberman*, the counterclaim-plaintiff had purchased the counterclaim-defendant's software corporation. *Lieberman*, 2020 WL 1815547, at *1. The counterclaim-plaintiff based its valuation of the counterclaim-defendant's corporation in large part on a lucrative software deal, which was not renewed "due to challenges and constraints associated with the software product." *Id.* Under those circumstances, the *Lieberman* court found a pecuniary duty to exist, noting that "representations made by a party in the course of a business transaction in which that party has a pecuniary interest often form the basis of negligent misrepresentation

---

*CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)). Furthermore, the Court has already found that Plaintiff's allegations surrounding the financial projections it received from Defendant satisfied the requirements to plead fraud, which has a higher standard for scienter than negligent misrepresentation. *See Lieberman v. BeyondTrust Corp.*, C.A. No. 1:19-CV-01730-RGA, 2020 WL 1815547, at *4 (D. Del. Apr. 9, 2020) ("The pecuniary duty element serves as a policy trade-off *for the reduction in the state of mind required to recover* by paring down the class of potentially liable defendants to those with a pecuniary duty to provide accurate information." (emphasis added) (cleaned up)).

15

claims." *Id.* at \*5 (citing *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, No. CIV.A. 99C-09-151-JRS, 2001 WL 541472, at \*5 (Del. Super. Ct. Apr. 12, 2001)).

The Court finds the present circumstances analogous to those in *Lieberman*. Just as in *Lieberman*, Plaintiff relied on representations made by Defendant in connection with a decision to invest in a corporation. Thus, the Court finds *Lieberman* instructive and concludes that Plaintiff has adequately alleged that Defendant owed Plaintiff a pecuniary duty.

Similarly, Plaintiff has adequately alleged it suffered a pecuniary loss. A pecuniary loss is "[a] loss of money or of something having monetary value." *Loss*, Black's Law Dictionary (12th ed. 2024). Plaintiff has alleged such a loss: the value of its investment in Sand Shack. (D.I. 1 at 17); *see also Envo, Inc. v. Walters*, C.A. No. 4156-VCP, 2009 WL 5173807, at \*7 (Del. Ch. Dec. 30, 2009) ("(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including: (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." (quoting Restatement (Second) of Torts § 552(B) (A.L.I. 1977))), *aff'd*, No. 460, 2012, 2013 WL 1283533 (Del. Mar. 28, 2013)). To the extent Defendant asserts that Plaintiff must plead the exact dollar amount of its pecuniary loss, the Court holds that such specificity goes beyond the pleading requirements of Rule 9(b). *Wash v. Finch*, No. CV 22-1367, 2022 WL 22852415, at \*5 (D.N.J. Dec. 27, 2022) ("Indeed, courts have held that under Federal Rule of Civil Procedure 9(b), Plaintiffs do not need to plead the exact dollar amount of their loss."); *see also King v. Pratt & Whitney Canada Corp.*, No. 20-359-LPS-CJB, 2021 WL 663059, at \*4 (D. Del. Feb. 19, 2021) ("Plaintiffs were required to plead the negligent misrepresentation claims in a manner that satisfies Rule 9(b)."), *report and*

*recommendation adopted*, No. 20-359-LPS-CJB, 2021 WL 7416434 (D. Del. Mar. 17, 2021). Thus, the Court concludes that Plaintiff's negligent misrepresentation claim is sufficiently pled, and Defendant's Motion to Dismiss Plaintiff's negligent misrepresentation claim is denied.

    4.    Plaintiff has Not Sufficiently Pled its Breach of Fiduciary Duty Claim

Defendant next asserts that Plaintiff has not sufficiently pled its breach of fiduciary duty claim. Defendant contends that Plaintiff has not pled sufficient facts to allege that Defendant had a fiduciary duty to Plaintiff. (D.I. 7 at 13-14). Furthermore, Defendant alleges that, even if a fiduciary duty did exist, the Complaint fails to allege facts overcoming "the presumption that [Defendant] properly and prudently exercised his managerial discretion." (*Id.* at 14).

Plaintiff disagrees. In Plaintiff's view, Defendant owed Plaintiff fiduciary duties through Defendant's role as the CEO and co-member of Sand Shack. (D.I. 8 ¶ 79). Plaintiff also asserts that the business judgement rule does not protect Defendant, because the Complaint asserts Defendant's decisions were made in bad faith "and driven by personal interest or concealment." (*Id.* ¶ 82).

The Court agrees with Defendant. Plaintiff does not appear to assert that Defendant had a fiduciary duty to Plaintiff *before* Plaintiff invested in Sand Shack. (*See* D.I. 1 ¶ 79 (alleged Defendant owed a fiduciary duty Plaintiff resulting from its status as CEO, co-founder and member of Sand Shack)). Nor could Plaintiff allege a fiduciary duty before Plaintiff invested in Sand Shack, as courts have held that no such duty exists between parties to a transaction wherein a business is purchased. *See, e.g., Lieberman*, 2020 WL 1815547, at *5 (finding no fiduciary duty between seller and purchaser of a corporation).

Similarly, under Delaware law, "minority members of an LLC do not owe fiduciary duties to other members." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 608 (S.D.N.Y.

2011) (citing *In re S. Canaan*, 427 B.R. at 102-03 ("[D]elaware common law does not impose fiduciary and other related duties to members of LLCs who are neither managers nor controlling members."); *Kuroda v. SPJS Holdings, L.L.C.*, No. 4030-CC, 2010 WL 925853, at *7 n.28 (Del. Ch. Mar. 16, 2010) ("Tellingly, defendants have not provided a single citation or reference to a Delaware statute or case that imposes fiduciary duties on non-managing or non-controlling members of an LLC."); *Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, at *1 (Del. Ch. Feb. 24, 2010) ("[E]ven though contracting parties to an LLC agreement have the freedom to expand, restrict, or eliminate fiduciary duties owed by managers to the LLC and its members and by members to each other, in the absence of a provision explicitly altering such duties, an LLC's managers and controlling members in a manager-managed LLC owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would.")).

However, "managers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the members of the LLC, unless the parties expressly modify or eliminate those duties in the operating agreement." *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011). Importantly, Plaintiff does not plead that Defendant was the manager of Sand Shack after Plaintiff's investment. (*See* D.I. 1 (not making any such assertion)). By contrast, Plaintiff does claim that it became Sand Shack's largest investor after its investment in Sand Shack. (D.I. 1 ¶ 20). In the absence of an allegation that Defendant was a manager of Sand Shack, Plaintiff has not pled sufficient facts for the Court to infer that Defendant owed Plaintiff a fiduciary duty as a manager of Sand Shack. Thus, Defendant's motion to dismiss Plaintiff's breach of fiduciary duty claim is granted. However, because the Court concludes that amendment may cure the above deficiencies, Plaintiff's breach of fiduciary duty claim is dismissed without prejudice.

## IV.    CONCLUSION

For the above reasons, the Court denies Defendant's Motion with respect to Counts I & III.

18

The Court grants Defendant's Motion with respect to Counts II & IV without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.